ORIGINAL

JORDAN ETH (BAR NO. 121617)
jeth@mofo.com
PHILIP T. BESIROF (BAR NO. 185053)
pbesirof@mofo.com
SETH A. SCHREIBERG (BAR NO. 267122)
sschreiberg@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Plaintiff
JMP SECURITIES LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CV 11 4498

| | |
|---|---|
| JMP SECURITIES LLC<br><br>Plaintiff,<br><br>v.<br><br>ALTAIR NANOTECHNOLOGIES INC.<br><br>Defendant. | Case No.<br><br>**JMP SECURITIES LLC'S COMPLAINT FOR:**<br><br>**1. BREACH OF CONTRACT**<br><br>**2. PROMISSORY ESTOPPEL**<br><br>**3. FRAUD**<br><br>**4. NEGLIGENT MISREPRESENTATION** |

JMP SECURITIES LLC'S COMPLAINT

Plaintiff JMP Securities LLC alleges as follows:

## PARTIES

1. Plaintiff JMP Securities LLC ("JMP") is a Delaware limited liability company with its principal place of business at 600 Montgomery Street, Suite 1100, San Francisco, California, 94111. JMP is a full-service investment banking and asset management firm that provides services to corporate and institutional clients.

2. Defendant Altair Nanotechnologies Inc. ("Altair") is a Canadian corporation with its principal place of business at 204 Edison Way, Reno, Nevada 89502. Altair is in the business of providing battery systems technologies for the renewable energy industry.

## JURISDICTION

3. Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, because JMP is a citizen of Delaware and California, and Altair is a citizen of Canada and Nevada, and the amount in controversy exceeds $75,000.

4. Altair is subject to personal jurisdiction in this District because many of the acts and omissions by Altair occurred in or caused injuries in this District. JMP's claims arise out of activities that were purposely directed by Altair toward JMP in substantial part in this District, and Altair purposely availed itself of the privilege of conducting business in this District.

5. Moreover, Altair consented to personal jurisdiction in this District pursuant to the contract at issue in this action.

## VENUE

6. Venue is proper in the Northern District under 28 U.S.C. § 1391(a)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District, and the harm suffered in part as a result of the acts complained of was sustained in this District.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to Civil L.R. 3-2(d), this action arises in part in the County of San Francisco and is properly assigned to the San Francisco Division.

8. Moreover, Altair consented to assignment in San Francisco pursuant to the contract at issue in this action.

## GENERAL ALLEGATIONS

9. In July 2010, Altair engaged JMP as its exclusive financial advisor. The contract between Altair and JMP provided that if Altair consummated a sale, merger, or strategic investment during the life of the contract or within six months following termination thereof, JMP would receive a fee, calculated as either (1) a percentage of the total proceeds from the transaction or (2) the value of Altair as of the closing of the transaction. The fee would vary depending on the type of transaction entered into by Altair.

10. Canon Investment Holdings Limited ("Canon"), through an affiliated entity, subsequently acquired a majority of Altair's shares through a share subscription agreement characterized by Altair as a strategic investment. Altair refused to pay the amount of the contractually agreed upon fee to JMP, thus materially breaching the contract. Altair later terminated the contract and refuses to pay JMP.

### The Agreement

11. **The Engagement Agreement.** On or about July 8, 2010, JMP and Altair entered into a written contract (the "Agreement"), whereby JMP was to act as the exclusive financial advisor to Altair for matters described in the Agreement. The Agreement provided for JMP to render "services as [JMP and Altair] mutually agree are necessary or appropriate. . . ." The Agreement contemplates a broad range of possible services that may be provided by JMP, including consulting services, performing periodic valuations, reviewing financials, and advising Altair concerning investments and acquisitions. *See* Exhibit A. The Agreement is governed by New York state law.

12. Pursuant to the Agreement, Altair expressly agreed to pay a retainer fee, to periodically reimburse JMP for expenses, including legal fees, and to pay JMP a percentage of the consideration received if a sale, merger, or strategic investment of equity interests was consummated.

13. The Agreement states that a "Sale or Merger of the Company includes any transaction or related series or combination of transactions whereby, directly or indirectly, control of the Company, all or substantially all of its business or assets . . . or at least a majority of the voting securities of the Company are transferred to, acquired by or combined with one or more persons in a sale or exchange of stock . . ." Exhibit A at 1.

14. The Agreement defines the term "Strategic Investment" as "a strategic investment of Equity Interests of the Company by financial or strategic investors," and it defines Equity Interests as "equity securities, rights, warrants, or convertible debt or preferred equity securities or any membership or partnership interests representing an interest in the equity or net earnings of the Company, its subsidiaries or affiliates and their respective successors or assigns." *Id.*

15. The Agreement sets out a varying fee structure depending on the type of transaction.

16. **Fee If Transaction Was a Sale or Merger.** "If a Sale or Merger is consummated . . . [Altair] will pay [JMP] by wire transfer a cash fee equal to two percent (2%) of the consideration involved in the Sale or Merger, subject to a minimum fee of $750,000. This fee will be due upon consummation of the Sale or Merger or its first closing, as applicable." Exhibit A at 2.

17. The Agreement provided that if a Sale or Merger was consummated with Yintong Energy Company Limited, its parent corporation, or its subsidiaries, the fee would be 1.7% rather than 2%. Exhibit A at 3.

18. The Agreement included a gross-up provision to determine how total consideration would be calculated in the event that the transaction involved "less than all of the securities, assets or businesses of the Company" but transferred control of the

JMP SECURITIES LLC'S COMPLAINT 3

Company. Exhibit A at 3. In such a transaction, "total consideration shall be determined as of the closing date . . . in which control of the company . . . has been acquired and will be determined as if all of the Company were being acquired as of such time in an amount equal to the sum of any and all consideration previously paid by an acquiring party and consideration then payable divided by the percentage of the Company acquired through such date." *Id.*

19. **Fee If Transaction Was a Strategic Investment.** If, "during the term of this Agreement or within six (6) months following the termination of this Agreement, the Company pursues a Strategic Investment ... [u]pon the closing of any such Strategic Investment, the Company will pay JMP by wire transfer a cash fee equal to six percent (6%) of the gross proceeds of the placement...." Exhibit A at 2. The Agreement provided that if a Strategic Investment was consummated with Yintong Energy Company Limited, its parent corporation, or its subsidiaries, the fee would be 4% rather than 6%. *Id.* at 3.

20. **Other Terms of the Agreement.** The Agreement states that Altair would reimburse JMP for "reasonable expenses incurred in connection with the Transaction, including, without limitation, the reasonable fees and expenses of legal counsel." Exhibit A at 3.

21. Altair also agreed to indemnify JMP from any losses and expenses related to the engagement. *See* Exhibit A at A-1 (Indemnification Agreement). Pursuant to the Indemnification Agreement, Altair agreed to "indemnify JMP . . . from and against any and all losses, claims, damages, expenses (including reasonable fees, disbursements and other charges of counsel[)] . . . to which [JMP] may become liable or subject, directly or indirectly, based upon, relating to or arising out of the engagement agreement." In addition, Altair agreed to reimburse JMP "for all expenses (including reasonable fees, disbursements and other charges of counsel) as they are incurred in connection with the investigation of, preparation for, defense of, or provision of evidence in, *any action* . . . directly or indirectly, relating to or arising out of, the Engagement Agreement or any Indemnified Person's role therein." *Id.* (emphasis added).

22. The Agreement states that provisions regarding fees and expenses, including the Indemnification Agreement, "shall survive any termination of this Agreement." Exhibit A at 5.

23. The Agreement, including the Indemnification Agreement, "contains the entire agreement" between JMP and Altair. Exhibit A at 5. The Agreement specifies that it may be amended in "writing signed by the party against whom it is sought to be enforced." *Id.* Either party may terminate the Agreement upon thirty (30) days' written notice. *Id.*

### The Transaction

24. **The Transaction.** On or about September 20, 2010, Altair and Canon, which operates through its indirect and wholly owned subsidiary, Yintong Energy Company Ltd., entered into a share subscription agreement pursuant to which Canon agreed to purchase and Altair agreed to issue common shares such that immediately following the closing of the transaction, Canon would own 51% of Altair. The fifth amendment to this share subscription agreement was signed on July 22, 2011, and resulted in Energy Storage Technology (China) Group Limited, an affiliate of Canon, owning 53.3% of the outstanding common shares of Altair or 49.8% on a fully diluted basis.

25. In discussions between Jeff Johnson (Managing Director of JMP), Terry M. Copeland (President and Chief Executive Officer of Altair), and John Fallini (Chief Financial Officer of Altair)—both before entering into the Engagement Letter and during the transaction with Canon—JMP stated its position, and Altair agreed, that a transaction in which the proceeds are received by Altair, as opposed to its shareholders, would be considered a Strategic Investment for purposes of JMP's compensation.

26. This shared understanding of the structure of the transaction and the fee payable to JMP was confirmed throughout Altair's Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, filed with the U.S. Securities and Exchange Commission ("SEC") on November 15, 2010 (the "Proxy Statement"):

- *Altair has agreed to pay JMP Securities a transaction fee for its financial advisory services equal to four percent of the transaction consideration*, payable upon consummation of the Common Share Issuance. Based on an estimated aggregate transaction consideration of $48,881,366, this fee is estimated to be approximately $1.955 million.

See Exhibit B at 26 (emphasis added).

- From June 24 to 25, 2010, Mr. Pedraza and Mr. Cheng traveled to Zhuhai, China to meet with Mr. Wei and other management and advisors of Canon and YTE. During the meetings, the parties discussed *potential strategic investment* between Altair and YTE, potential product sale by Altair and product/technology demonstration in China.

See Exhibit B at 12 (emphasis added).

27. Further, JMP outlined in its fairness opinion, dated September 16, 2010, which Altair incorporated into the Proxy Statement, that Altair had communicated to JMP its understanding that the transaction was to be deemed a Strategic Investment:

> *You have represented to us [JMP], and accordingly we have assumed, that the Transaction is a private placement.* . . .
>
> In addition, with your consent, we have based our analysis on transactions in which a majority of the shares being sold were being sold by the issuer . . . *and we have not included in our analysis transactions involving a merger or sale of assets by the issuer* or the sale of a significant amount of its outstanding equity securities by the holders thereof.

See Exhibit B at Annex 2 (emphasis added).

28. On September 20, 2010, Altair held a press conference to discuss the transaction, a transcript of which was filed with the SEC on September 21, 2010. Dr. Terry Copeland, President and CEO of Altair stated that the "purpose of today's call is to discuss nearly $48.9 million *strategic investment in Altair* and the definitive agreements signed yesterday with Canon Investment Holdings, Limited, a Hong Kong registered company." See Exhibit C at 2 (emphasis added). In addition, a presentation by Altair management, filed with the SEC on September 20, 2010, included a slide discussing the "Communication to Announce *Strategic Investment in Altair*." See Exhibit D at 3 (emphasis added).

29. In light of the language of the Agreement, subsequent communications between the parties, the Proxy Statement, and other public communications issued by Altair, the transaction is properly deemed a Strategic Investment. JMP operated under that belief at all relevant times.

30. JMP is entitled under the Agreement to a fee of 4% of the gross proceeds of the transaction. The gross proceeds from the Canon Strategic Investment were $57,510,753.91, which yields a 4% fee to JMP, or $2,300,430.16. After crediting payments previously paid, the resulting net fee owed to JMP is at least $2,150,430.16.

31. Contrary to its agreement with JMP, Altair now refuses to pay JMP the fee promised in the Agreement, communications with JMP, the Proxy Statement, and other public communications.

### The Proxy Statement Modifies the Fee Provision in the Agreement

32. In the alternative, even if the transaction were deemed a Sale or Merger under the Agreement, Altair's Proxy Statement, filed with the SEC on November 15, 2010 (Exhibit B), amended the parties' Agreement regarding fees.

33. The Agreement specifically provides that it may be amended in a "writing signed by the party against whom it is sought to be enforced." Exhibit A at 5. The Proxy Statement is a written document, signed by Terry Copeland, in his official capacity as Altair's President and Chief Executive Officer. *Id.* at 95.

34. The Proxy Statement provides that "Altair has agreed to pay JMP" a fee "equal to four percent of the transaction consideration." *See* Exhibit B at 26. The Proxy Statement is a valid amendment to the fee provision contained in the Agreement, and amends and supersedes the fee provisions contained in the Agreement.

### Fee Calculated Pursuant to the "Gross-Up" Provision

35. In the alternative, if the transaction were deemed a Sale or Merger under the Agreement, and if the written Proxy Statement signed by Mr. Copeland did not modify the fee provision of the Agreement, JMP would be entitled to a fee calculated according to the gross-up provision in the Agreement.

JMP SECURITIES LLC'S COMPLAINT                                                                                  7

36. The gross-up provision provides that if the "Transaction is the result of the disposition of less than all of the securities, assets or businesses of the Company ... total consideration shall be determined as of the closing date ... in which control of the company ... has been acquired and will be determined as if all of the Company were being acquired as of such time in an amount equal to the sum of any and all consideration previously paid by an acquiring party and consideration then payable divided by the percentage of the Company acquired through such date." Exhibit A at 3.

37. Altair accomplished the disposition of 49.8 % of its assets through an issuance of new securities from its treasury, calculated on a fully diluted basis. Therefore, JMP would be entitled to 1.7% of the gross proceeds divided by 49.8% (.498). The gross proceeds from the Canon Strategic Investment were $57,510,753.91. The gross-up provision entitles JMP to a fee of $1,963,218.51. After crediting payments previously paid, the resulting net fee owed to JMP is at least $1,813,218.51.

### Termination of the Agreement

38. On or about August 11, 2011, Altair served JMP notice that it was terminating the Agreement, effective September 12, 2011.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract for Failure to Pay JMP)

39. JMP realleges and incorporates by reference the allegations contained in Paragraphs 1-38 of the Complaint as if fully set forth in this claim for relief.

40. The Agreement is a valid and enforceable contract establishing the terms and conditions governing JMP's exclusive engagement as Altair's financial advisor.

41. JMP has performed, or has been excused from performing, all conditions, covenants, and promises that it was obligated to perform under the terms of the Agreement, including advising on financing strategies, conducting valuation analyses, delivering a fairness opinion, advising on the structure of the transaction and the letter of intent, and conducting due diligence.

42. Pursuant to the Agreement, Altair was responsible for paying JMP a fee of 4% of the gross proceeds once the Strategic Investment with Canon was consummated.

43. If the transaction were a Sale or Merger, pursuant to the Agreement as modified by Altair's Proxy Statement, Altair was responsible for paying JMP a fee of 4% of the gross proceeds once the Sale or Merger with Canon was consummated.

44. Altair also was responsible for reimbursing JMP for reasonable costs and fees associated with its engagement, including attorneys' fees.

45. Altair breached the terms and conditions of the Agreement by failing to pay JMP for its services in a timely manner.

46. As a direct and proximate result of the aforementioned wrongful conduct by Altair, JMP has been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Promissory Estoppel)

47. JMP realleges and incorporates by reference the allegations contained in Paragraphs 1-46 of the Complaint as if fully set forth in this claim for relief.

48. Altair promised to pay JMP 4% of the gross proceeds resulting from a Strategic Investment entered into between Altair and Canon, the corporate parent of Yintong Energy Company Limited. This promise was set out both in the Agreement and in subsequent communications between Altair and JMP.

49. JMP acted in justifiable and detrimental reliance on Altair's representations in entering into the Agreement, providing financial advisory services pursuant to the Agreement, and assisting Altair with the Strategic Investment.

50. As a direct and proximate result of the aforementioned wrongful conduct by Altair, JMP has been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Fraud)

51. JMP realleges and incorporates by reference the allegations contained in Paragraphs 1-50 of the Complaint as if fully set forth in this claim for relief.

52. In or about July 2010, Altair represented to JMP that it would comply with the terms of the Agreement between them.

53. Subsequently, during the course of the transaction, Altair represented to JMP through written and oral communications that it considered the transaction a Strategic Investment, and would pay JMP a sum equal to 4% of the gross proceeds.

54. In reliance on that statement, JMP issued a fairness opinion that was incorporated into Altair's Proxy Statement, which described the transaction as a Strategic Investment, and continued to provide services related to the transaction. In addition, based upon the prospect of earning the 4% fee for the transaction, in March 2011 JMP was induced to act as placement agent in a $6.4 million registered securities offering by Altair, which is a much smaller transaction than JMP's typical placement agent engagement in the ordinary course of its business.

55. Altair made these material representations regarding the nature of the transaction knowing that the representations were false and that it not only considered the transaction a Sale or Merger, but it did not intend to pay JMP for its services in accordance with the terms and conditions of the Agreement.

56. Altair made these representations with the intent to defraud and deceive JMP, to induce JMP to enter into the Agreement, to perform substantial work under the Agreement, and to analyze its transaction under false pretenses. Altair knew it would not perform or make payments in accordance with the Agreement or subsequent representations to JMP.

57. JMP acted in justifiable reliance on Altair's representations in entering into the Agreement, providing services under the Agreement, rendering a fairness opinion in accordance with representations made by Altair, and continuing work until the transaction was completed.

58. As a direct and proximate result of the aforementioned wrongful conduct by Altair, JMP has been damaged in an amount to be proven at trial.

59. The actions and omissions of Altair were so outrageous, willful, wanton, and in reckless disregard to JMP as to entitle JMP to punitive damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

60. JMP realleges and incorporates by reference the allegations contained in Paragraphs 1-59 of the Complaint as if fully set forth in this claim for relief.

61. Altair made the material representations described above regarding its willingness to comply with the Agreement, to consider the transaction a Strategic Investment, and to pay JMP for its services. It made these material representations when it knew or should have known that the representations were false and that it would not honor the Agreement, nor abide by its subsequent representations to JMP.

62. Altair knew or should have known that this information was material to JMP, and that misstatements would induce JMP to enter into the Agreement, to perform substantial work under the Agreement, and to analyze its transaction under false pretenses.

63. JMP acted in justifiable reliance on Altair's representations in entering into the Agreement, providing services under the Agreement, rendering a fairness opinion in accordance with representations made by Altair, and continuing work on the transaction.

64. As a direct and proximate result of the aforementioned wrongful conduct by Altair, JMP has been damaged in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, JMP prays that this Court:

1. Award JMP damages incurred as a result of Altair's unlawful and wrongful conduct in an amount to be proven at trial, including prejudgment interest in an amount to be proven at trial;

2. Award JMP punitive damages in light of Altair's malicious and intentional misconduct in an amount to be proven at trial;

   3. Award JMP its costs and expenses of suit incurred herein, including reasonable attorneys' fees; and

   4. Grant JMP such other relief to which it may be entitled.

Dated: September 9, 2011

JORDAN ETH
PHILIP T. BESIROF
SETH A. SCHREIBERG
MORRISON & FOERSTER LLP

By: _/s/ Philip Besirof (ADT)_
   Philip T. Besirof

Attorneys for Plaintiff
JMP SECURITIES LLC