United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JMP SECURITIES LLP,                    )   Case No. 11-4498 SC
                                       )
            Plaintiff,                 )   ORDER GRANTING DEFENDANT'S
                                       )   SECOND MOTION FOR JUDGMENT
      v.                               )   ON THE PLEADINGS
                                       )
ALTAIR NANOTECHNOLOGIES INC.,          )
                                       )
            Defendant.                 )
                                       )
                                       )
_____)

## I.    INTRODUCTION

Now before the Court is the Second Motion for Judgment on the Pleadings brought by Defendant Altair Nanotechnologies Inc. ("Altair") against Plaintiff JMP Securities LLP ("JMP").  ECF Nos. 37 ("2d MJP"), 42 ("2d Opp'n"), 45 ("2d Reply").  The parties' moving papers supply a choice-of-law analysis that they omitted when briefing Altair's First Motion for Judgment on the Pleadings. ECF Nos. 21 ("1st MJP"), 23 ("1st Opp'n"), 26 ("1st Reply").  The instant motion is suitable for determination without oral argument. Civ. L.R. 7-1(b).  As set forth below, the Court GRANTS the motion.

## II.   BACKGROUND

This Order assumes familiarity with the Court's March 14, 2012 denial of Altair's First Motion for Judgment on the Pleadings.  ECF

**United States District Court**
For the Northern District of California

No. 30 ("1st Order").[1]  To summarize, Altair, a technology company,
anticipated entering into a substantial financial transaction,
though the timing and nature of the transaction were uncertain.  On
July 8, 2010, Altair hired JMP to serve as its financial advisor
for the transaction.  The parties formalized their relationship in
a written Agreement.  ECF No. 1 ("Compl.") Ex. A ("Agr.").  The
Agreement provided JMP with a retainer fee.  It also provided JMP
with a contingent fee, payable after a completed transaction.  The
size of this fee would be determined by (1) the type of transaction
that Altair consummated and (2) with whom.  JMP would receive a
certain percentage fee if Altair was sold to or merged with another
company (the "sale/merger" fee)[2] and another, higher percentage fee
if Altair secured a "strategic investment."  In both cases, JMP's
fee would be discounted if Altair's partner in the transaction was
Yintong Energy Company Limited ("Yintong") or one of its corporate
affiliates.  1st Order at 3-4 (citing and summarizing provisions).

In addition to its fee-setting provisions, the Agreement
included two more clauses that are relevant to this motion.  First,
the Agreement contains a choice-of-law clause stating that it
"shall be governed by and construed in accordance with the internal
laws of the State of New York without giving effect to any
principles of conflicts of law."  Agr. at 5.  Second, the Agreement
incorporates an attached Indemnification Agreement indemnifying JMP

---

[1] JMP Sec. LLP v. Altair Nanotechnologies Inc., 11-4498 SC, 2012 WL
892157, 2012 U.S. Dist. LEXIS 34549 (N.D. Cal. Mar. 14, 2012).

[2] In actuality, two fee provisions apply in the sale/merger
context: a flat fee in case of complete sale or merger and a
"gross-up provision" in case of partial sale or merger.  Agr. at 2,
3.  Because the distinction is irrelevant here, the Court treats
the sale/merger scenario as providing a single fee.

**United States District Court**
For the Northern District of California

1   against claims "relating to or arising out of" the Agreement.  Agr.

2   Ex. A ("Indem. Agr.") at A-1.

3       In July 2011, Altair and Yintong completed a transaction

4   which, all parties concede, was covered by the Agreement.  Roughly

5   $57.5 million changed hands.  Compl. ¶ 30.  Nevertheless, Altair

6   allegedly has not yet made good on its promise to pay JMP the

7   contingent fee.  Id. ¶ 31.  The parties cannot agree on what type

8   of transaction Altair completed and, therefore, on the size of

9   JMP's fee.

10      In September 2011, JMP sued Altair for (1) breach of contract,

11  (2) promissory estoppel, (3) fraud, and (4) negligent

12  misrepresentation.  Compl. ¶¶ 39-64.  JMP's breach of contract

13  claim is actually two claims in one.  The first concerns the size

14  of the fee owed to JMP under the Agreement (the "fee claim"); JMP

15  pled this claim using three alternative theories of breach, each

16  related to a different fee-setting provision in the Agreement.  Id.

17  ¶¶ 41-43.  The second concerns JMP's alleged contractual right to

18  reimbursement from Altair for JMP's attorney fees in this lawsuit

19  (the "attorney fee claim").  Id. ¶ 44.

20      In November 2011, Altair brought a motion for judgment on the

21  pleadings which challenged JMP's attorney fee, promissory estoppel,

22  fraud, and negligent misrepresentation claims, as well as two of

23  the three theories underpinning the fee claim.[3]  JMP opposed the

24  motion.  Notably, although the parties' papers described the case

25  as a straightforward matter of contract interpretation, they also

26

27  [3] The Court left all three theories undisturbed, 1st Order at 21,
    and Altair (properly) has not renewed its challenge to the fee

28  claim in this motion.  Accordingly, the fee claim may proceed as
    pled in the Complaint.

**United States District Court**
For the Northern District of California

1   hinted that it might be something more.  First, both parties used

2   New York law to brief the breach of contract claims (that is, the

3   fee and attorney fee claims) but California law to brief the other

4   claims, despite the clause in the Agreement selecting New York law.

5   Second, the briefs contained a series of footnotes in which the

6   parties gestured toward conflict-of-law issues without ever really

7   joining them.  To summarize, the parties assured the Court that the

8   case presented no conflicts of law -- but that, if it did, the

9   conflict would favor their side.  1st MJP at 16 n.4; 1st Opp'n at

10  14 n.7, 15 n.8, 21 n.14; 1st Reply at 8 n.3, 9 n.4.  These apparent

11  assurances had the opposite of their intended effect and spurred

12  the Court to undertake sua sponte the choice-of-law analysis that

13  the parties seemed pointedly to be avoiding.  1st Order at 8-15.

14       With one exception, the Court determined that JMP's claims

15  were governed by the substantive law of New York.  Id. at 15.

16  Because the parties had briefed the fee claim using New York law,

17  the Court applied that body of law, ultimately denying Altair's

18  motion with respect to that claim.  Id. at 15-20.  With respect to

19  the promissory estoppel, fraud, and negligent misrepresentation

20  claims, the Court determined that, by briefing California rather

21  than New York law, the parties had failed to place the correct

22  rules of decision before the Court.  Id. at 15.  Because Altair was

23  the moving party and therefore bore the burden of persuasion, the

24  Court denied Altair's motion with respect to those claims.  Id.

25  Finally, with respect to the attorney fee claim, the Court

26  determined that the parties had not adequately briefed the issue of

27  which law applied.  Id. at 12-14.  The Court therefore denied

28  Altair's motion with respect to that claim.  Id. at 14.

Now Altair has filed a Second Motion for Judgment on the Pleadings.  The instant motion explicitly articulates the steps of the choice-of-law analysis that the last motion omitted, then refers the Court to the first round of briefing for the merits. With the choice-of-law analysis now fully briefed, the Court can determine whether Altair is entitled to judgment on the pleadings.

**III.  DISCUSSION**

    **A.**    **JMP's Procedural Challenge**

As a preliminary matter, JMP challenges Altair's right to bring the instant motion, saying it is merely a motion for reconsideration filed under a different name.  2d Opp'n at 3-5.  In this district, motions to reconsider an interlocutory order in a civil case: may only be filed after seeking and receiving the leave of the Court; may not duplicate arguments made the first time around; and must be based on a showing that either (1) the parties excusably erred as to the material facts or controlling law, despite reasonable diligence, (2) the law or facts have materially changed since the order issued, or (3) the court manifestly failed to consider a material fact or dispositive argument presented to it.  Civ. L.R. 7-9.  JMP argues that, under this standard, the instant motion is both substantively and procedurally improper: substantively improper because Altair offers new arguments that it could have but did not make, and procedurally improper because Altair did not seek leave to file it.  JMP urges the Court to deny Altair's motion in summary fashion in the interests of judicial economy and finality.  2d Opp'n at 5.

The Court concludes, however, that the values of economy and

**United States District Court**
For the Northern District of California

finality are better served by considering Altair's motion than by summarily rejecting it.  First, if the Court were to do as JMP asks and read the instant motion as one for reconsideration, the Court would be inclined to grant it.  The Court takes Altair's position to be that the Court erred in concluding that New York substantive law applied to all of JMP's claims, though Altair, understandably but unnecessarily, seems reluctant to say this in so many words. See, e.g., 2d Reply at 6.  The Court reached its conclusion after conducting a choice-of-law analysis omitted by the parties.  These parties are not, of course, the first people ever to dodge choice-of-law issues, which can be difficult, even arcane.  See, e.g., ABF Capital Corp. v. Grove Properties Co., 126 Cal. App. 4th 204, 214-15 (Cal. Ct. App. 2005) (criticizing courts who have "simply passed over" required choice-of-law analysis).  For the reasons detailed in the next section, the Court is persuaded that its earlier choice-of-law analysis is worth revisiting.

Given that reality, as well as the failure of both parties (not just Altair) to articulate the choice-of-law issues raised in this case, the Court is inclined to take the instant motion on its own terms.  The issues briefed here were not adequately considered by either party's initial papers, and the Court does not discern any improper purpose behind Altair's filing of the instant motion. On the contrary, the motion serves the useful purpose of narrowing the issues for trial or possible settlement, and Altair has been careful only to supplement its previous briefing in conformity with guidance provided by the Court.

Summary denial at this point would only result in wasteful and empty formality, since denying the motion likely would prod Altair

**United States District Court**
For the Northern District of California

1   to file a motion for reconsideration, which the Court would be

2   inclined to grant.  The Court's local rules are meant to streamline

3   the administration of justice, not complicate it.  Moreover, those

4   rules do nothing to limit the Court's "inherent procedural power to

5   reconsider, rescind, or modify an interlocutory order for cause

6   seen by it to be sufficient." <u>City of Los Angeles, Harbor Div. v.</u>

7   <u>Santa Monica Baykeeper</u>, 254 F.3d 882, 889 (9th Cir. 2001) (citing

8   <u>Melancon v. Texaco, Inc.</u>, 659 F.2d 551, 553 (5th Cir. 1981); Fed.

9   R. Civ. P. 54(b)).  In the extremely unusual circumstances of this

10  case, punctilious enforcement of the local rule's technical

11  requirements would do more harm than good; accordingly, the Court

12  declines to dismiss the instant motion in summary fashion and

13  instead proceeds to its substance.[4]

14      **B.   <u>Choice of Law</u>**

15      As the Court recognized in its earlier Order, when confronted

16  with a choice-of-law question, a federal district court sitting in

17  diversity must use the choice-of-law rules of its forum state to

18  determine which state's substantive law to apply.  1st Order at 9-

19  10 (citing <u>Fields v. Legacy Health Sys.</u>, 413 F.3d 943, 950 (9th

20  Cir. 2005)).  This Court therefore applies California's choice-of-

21  law rules.  When a contract contains a choice-of-law provision,

22  courts applying California's choice-of-law rules follow <u>Nedlloyd</u>

23  <u>Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459 (Cal. 1992).  This

24  Court followed the <u>Nedlloyd</u> analysis in the First Order.  When the

25  Court reached the question of which claims fell within the scope of

26  the Agreement's choice-of-law clause, the Court cited <u>Nedlloyd</u> for

27

28  ---
    [4] Nothing in this Order should be construed to create any sort of exception to or expansion of Civil Local Rule 7-9.

United States District Court
For the Northern District of California

1  the proposition that it encompassed all claims "arising from or

2  related to" the Agreement, regardless of whether they were

3  characterized as contract or tort claims and including "tortious

4  breaches of duties emanating from the agreement."  1st Order at 14

5  (quoting Nedlloyd, 3 Cal. 4th at 470).[5]  Applying this rule, the

6  Court held that all four of JMP's claims were governed by the

7  Agreement's choice-of-law clause and therefore would be decided

8  under the substantive law of New York state.  Id. at 15.

9      In its second motion, Altair points out that, under

10  California's choice-of-law rules, the scope of the claims covered

11  by a choice-of-law agreement "is a matter that ordinarily should be

12  determined under the law designated therein." Washington Mut.

13  Bank, FA v. Superior Court, 24 Cal. 4th 906, 916 n.3 (2001) (citing

14  Nedlloyd, 3 Cal. 4th at 469 n.7).  In Nedlloyd, the California

15  Supreme Court interpreted the scope of a contract's choice-of-law

16  clause.  The clause selected Hong Kong law, but the parties had

17  neither briefed nor requested judicial notice of that

18  jurisdiction's laws.  The Nedlloyd court held that the question of

19  the scope of the choice-of-law clause should be determined by Hong

20  Kong law, but, given that it did not have Hong Kong law before it,

21  the court used California law instead.  Nedlloyd, 3 Cal. 4th at 469

22  n.7; see also Restatement (Second) of Conflict of Laws § 136 cmt. h

23  (1971).  In short, the Nedlloyd court applied California law only

24

25  [5] As set forth more fully in Section III.C.4 infra, JMP's fraud and
negligent misrepresentation claims are based on Altair's alleged

26  promise and subsequent refusal to pay JMP a certain fee; the
promises were, according to JMP, either frauds or negligent

27  misrepresentations.  See Compl. ¶¶ 51-64.  Thus, JMP's fraud and
negligent misrepresentation claims rest on Altair's alleged

28  tortious breaches of Altair's contractual duty to pay JMP the
promised fee.

**United States District Court**
For the Northern District of California

1   because it did not have the correct body of law before it.

2        Altair argues that <u>Nedlloyd</u> therefore counsels this Court to

3   use New York law to determine the scope of the Agreement's choice-

4   of-law clause, because, unlike in <u>Nedlloyd</u>, the parties have placed

5   the applicable New York law before the Court.  2d MJP at 8.  JMP

6   does not dispute this point, and the Court agrees with it.  The

7   scope of a contract's choice-of-law clause is determined by the

8   body of law identified in the agreement, unless the agreement

9   specifies a different scope.  <u>Washington Mut.</u>, 24 Cal. 4th at 916

10  n.3; <u>see also</u> <u>Batchelder v. Kawamoto</u>, 147 F.3d 915, 918 n.2 (9th

11  Cir. 1998).  Accordingly, because the Agreement at issue in this

12  case identifies New York law and does not specify otherwise, the

13  Court applies New York law to determine which of JMP's claims the

14  Agreement covers.

15       New York differs from California in its approach to

16  determining the scope of a choice-of-law clause.  Under the

17  California approach, all claims "arising from or related to" a

18  contract are covered by the contract's choice-of-law clause,

19  regardless of whether they are characterized as contract or tort

20  claims.  <u>Nedlloyd</u>, 3 Cal. 4th at 470.  But the New York approach

21  distinguishes between these types of claims: "Under New York law,

22  choice-of-law clauses are deemed to apply only to claims that are

23  based on rights conferred by the agreement."  <u>Sarandi v. Breu</u>, C

24  08-2118 SBA, 2009 WL 2871049, at *4 (N.D. Cal. Sept. 2, 2009)

25  (citing <u>Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.</u>,

26  414 F.3d 325, 335 ("<u>Fin. One</u>") (2d Cir. 2005)).  This means that

27  claims arising from tortious breaches of contractual duties are,

28  under New York law, not covered by the contract's choice-of-law

clause. See Fin. One, 414 F.3d at 335. Even claims based on the contract law doctrine of promissory estoppel are regarded as extra-contractual (because promissory estoppel applies only in the absence of an enforceable contract) and therefore fall outside the scope of a contract's choice-of-law provision. Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc., 02 CV. 7666 (LBS), 2005 WL 1123735, at *4 (S.D.N.Y. May 11, 2005) (applying New York law). Under these rules, it is clear that only those claims based on Altair's alleged breaches of rights conferred by the Agreement fall within the scope of the Agreement's choice-of-law clause. Accordingly, the Court holds that JMP's fee claim and (because JMP alleges that it is based on rights conferred by the Agreement) attorney fee claim fall within the scope of the Agreement's clause selecting New York law. JMP's extra-contractual promissory estoppel, fraud, and negligent misrepresentation claims do not.

This holding raises two subordinate questions. First, does any conflict of law prevent the Court from applying New York law to the fee and attorney fee claims? Second, if New York law does not apply to the extra-contractual claims, which state's law does?

The Court answers the first question in the negative: No conflict with California law prevents the Court from applying New York law to the fee claim and attorney fee claim. Previously, the Court determined that the parties had raised the possibility of such a conflict and that Altair had not completed the analysis that would allow the Court to determine whether the possibility was a reality. 1st Order at 12-13. Altair has since done so. 2d MJP at 4-5. In brief, California and New York conflict in their treatment of unilateral attorney fee provisions: California has a fundamental

1  policy against unilateral attorney fee provisions, while New York

2  allows them.  Hence, California's fundamental policy regarding

3  unilateral attorney fee provisions is in conflict with New York

4  law.  See ABF Capital, 126 Cal. App. 4th at 223.  If the Court

5  found such a provision here, being bound by California's choice-of-

6  law rules (see Fields, 413 F.3d at 950), the Court would be

7  required to enforce California's fundamental policy against such

8  clauses.  However, the Court concludes that the plain language of

9  the Agreement contemplates only indemnification from the costs of

10  third-party suits and does not give rise to a unilateral right to

11  attorney fees in "intra-party" litigation.  Because the Court

12  determines that the Agreement does not provide either party with a

13  unilateral right to attorney fees, the Court agrees with the

14  parties that the merits of JMP's attorney fee claim should be

15  determined under New York law.[6]

16      Turning to the second question -- which state's laws apply to

17  the extra-contractual claims if not New York's law -- the Court

18  determines that California law applies.  In the absence of an

19  effective choice-of-law agreement, California choice-of-law rules

20  permit a court to apply the decisional rules of its forum state

21  "unless a party litigant timely invokes the law of a foreign

22  state."  Washington Mut., 24 Cal. 4th at 919 (internal quotation

23  marks omitted).  Here, JMP has not timely invoked foreign law with

24  respect to the extra-contractual claims.  During the first round of

25  _____

26  [6] Both parties seek application of New York law to the attorney fee
    claim.  2d Opp'n at 8 ("Altair does not dispute that the Agreement

27  is governed by New York law . . . ."), 2d Reply at 2 ("JMP does not
    dispute that applying New York law regarding whether an indemnity

28  provision permits the recovery of attorneys' fees presents no
    conflict with a fundamental policy of California.").

briefing, JMP joined Altair in briefing these claims using California law, and JMP has done the same in briefing this motion. See 1st Opp'n at 14-16; 2d Opp'n at 6-7.  Therefore, the Court deems JMP to have acquiesced in the application of California law to the extra-contractual claims.  See Hatfield v. Halifax PLC, 564 F.3d 1177, 1184 (9th Cir. 2009).

Having ascertained that New York law applies to JMP's contract-based claims (i.e., its attorney fee claim, as well as the fee claim that already has survived a challenge from Altair) and that California law applies to the extra-contractual claims, the Court now proceeds to the merits of Altair's Second Motion for Judgment on the Pleadings.

**C.   Motion for Judgment on the Pleadings**

     **1.   Legal Standard**

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  Moreover, a motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss, and thus the pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Johnson v. Rowley, 569 F.3d 40, 44 (2d Cir. 2009); see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (citing Johnson).  A claim is plausible on its

United States District Court
For the Northern District of California

1  face when the plaintiff pleads "factual content that allows the

2  court to draw the reasonable inference that the defendant is liable

3  for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937,

4  1949 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556

5  (2007)).

6              **2.   Attorney Fees**

7       JMP bases its breach of contract claim for attorney fees on

8  the four corners of the Agreement, including the incorporated

9  Indemnification Agreement, both of which JMP attached to the

10  Complaint.  JMP's attorney fee claim is therefore amenable to

11  judgment on the pleadings because it only requires the Court to

12  interpret the effect of the contract's undisputed terms.  <u>See</u> <u>Hal</u>

13  <u>Roach Studios</u>, 896 F.2d at 1550; <u>see also</u> Wright & Miller, 5C <u>Fed.</u>

14  <u>Prac. & Proc. Civ.</u> § 1367 (3d ed.).  The only question is whether

15  the Agreement or Indemnification Agreement provides JMP with a

16  right to have Altair pay JMP's attorney fees arising from the

17  instant, intra-party litigation (as compared to a lawsuit filed by

18  a third party).  The Court concludes that neither does.

19       The Court reaches this conclusion in reliance on <u>Hooper</u>

20  <u>Associates, Ltd. v. AGS Computers, Inc.</u>, 74 N.Y.2d 487 (1989).  In

21  that case, the high court of the state of New York noted that under

22  New York law the general rule is that "attorney's fees are

23  incidents of litigation" and that parties therefore bear their own

24  attorney fees unless there is a legal reason to do otherwise.

25  <u>Hooper</u>, 74 N.Y.2d at 491.  Beginning from this premise, the court

26  observed that

27          [w]hen a party is under no legal duty to indemnify, a
           contract assuming that obligation must be strictly
28          construed to avoid reading into it a duty which the

**United States District Court**
For the Northern District of California

> parties did not intend to be assumed.  The promise should
> not be found unless it can be clearly implied from the
> language and purpose of the entire agreement and the
> surrounding facts and circumstances.  Inasmuch as a
> promise by one party to a contract to indemnify the other
> for attorney's fees incurred in litigation between them
> is contrary to the well-understood rule that parties are
> responsible for their own attorney's fees, the court
> should not infer a party's intention to waive the benefit
> of the rule unless the intention to do so is unmistakably
> clear from the language of the promise.

Hooper, 74 N.Y.2d at 491-92 (citations omitted).

In this case, nothing in the language of the Agreement or the incorporated Indemnity Agreement, or in the facts and circumstances surrounding the execution of the Agreement, "unmistakably" shows that the parties intended to give JMP a contractual right to recover attorney fees from Altair if the fees arose from litigation between them.  In other words, there is no reliable evidence that JMP and Altair intended the Indemnification Agreement to cover claims between themselves.  The Indemnity Agreement contains merely "general language indemnifying any breach," which "is not specific enough to allow the court to infer that the parties intended the indemnification of counsel fees in an action on the contract." Foster Poultry Farms Inc. v. Suntrust Bank, 355 F. Supp. 2d 1145, 1152 (E.D. Cal. 2004) (applying New York law) (internal quotation marks and citations omitted).

JMP argues that, read as a whole, the Indemnification Agreement clearly gives JMP a right to intra-party indemnification because it contains not only general indemnification language but also provisions that specifically target third-party claims. According to JMP, the Court can only give effect to all the language of the contract by reading the general language to cover claims between the contracting parties while the more specific

**United States District Court**
For the Northern District of California

language covers third-party claims.  1st Opp'n at 13.  This argument rests on a faulty premise: While it is true that the Indemnification Agreement clearly contemplates third-party claims, that is not enough.  There must be some further indication that the parties specifically contemplated intra-party claims and affirmatively determined to indemnify a party for attorney fees arising from such claims.  Hooper, 74 N.Y.2d at 492; Foster Poultry, 355 F. Supp. 2d at 1152.  The mere presence of specific language amidst general language does not overcome the presumption against intra-party indemnification, by implication as it were.  "Language providing indemnification for action on the contract must be expressly present."  Foster Poultry, 355 F. Supp. 2d at 1152.  Reading the Indemnification Agreement in its entirety and examining the circumstances surrounding the drafting of the Agreement, the Court finds nothing that rises to the required level of specificity.  The Court therefore concludes that the Indemnification Agreement covers only third-party claims.

JMP cites to a line of New York cases where courts read contracts in the manner urged by JMP here, but the cases are distinguishable.  In each one, the court encountered particular facts or contract language that unmistakably demonstrated that the parties had distinguished between third-party and intra-party actions and affirmatively opted to provide a right of indemnity in the latter case.  See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 177-79 (2d Cir. 2005) (drafting history showed intent to provide intra-party indemnification); Pfizer, Inc. v. Stryker Corp., 348 F. Supp. 2d 131, 145-46 (S.D.N.Y. 2004) (indemnification for breach of warranty

1   of representation did same); <u>Promuto v. Waste Mgmt., Inc.</u>, 44 F.

2   Supp. 2d 628, 650-52 (S.D.N.Y. 1999) (explicit cap on damages in

3   action between the parties did same).[7]   JMP identifies nothing

4   within or outside the four corners of the Agreement that reliably

5   indicates a similar intent here.

6        On the contrary, as Altair points out, the Indemnification

7   Agreement's inclusion of both notice-of-claim and assumption-of-

8   defense clauses evinces an intent to cover only third-party claims.

9   1st MJP at 15.   To apply these provisions to litigation between the

10  parties would be absurd: JMP would be required to provide Altair

11  with notice that JMP had sued Altair, and Altair would be

12  presumptively entitled to select JMP's counsel and control JMP's

13  litigation of the case.   By including these provisions, the parties

14  signaled that they did not intend the indemnification agreement to

15  apply to intra-party lawsuits.[8]   See <u>Goshawk Dedicated Ltd. v. Bank</u>

[7] JMP also cites to <u>Sagittarius Broad. Corp. v. Evergreen Media Corp.</u>, 243 A.D.2d 325 (N.Y. App. Div. 1997).  In that case, a New York state appellate panel distinguished <u>Hooper</u> and found a right to intra-party indemnification.  However, the panel's terse, three-paragraph opinion does not reproduce the contract language upon which it relied.  Nor does the panel's one-sentence analysis of the contract provide reliable clues.  <u>See</u> <u>id.</u> at 326 ("Here, the first sentence of the subject clause cannot reasonably be interpreted as limited to third-party claims, particularly in view of the second portion of that clause, which clearly pertains to third-party actions, thereby rendering the first part mere surplusage were it only applicable, as defendant maintains, to third-party actions.").  The Court can give <u>Sagittarius</u> no weight because the Court cannot discern whether the contract at issue there resembles the one here.

[8] JMP points to these very provisions to support its position, saying that they "explicitly apply only to actions 'brought <u>against</u> any Indemnified Person'" and therefore support a reading that the Indemnification Agreement contemplates both third-party and intra-party lawsuits.  1st Opp'n at 13 (quoting Indem. Agr. at A-1) (emphasis in original).  Assuming arguendo that this language is as explicit as JMP says it is, the Indemnification Agreement defines "Indemnified Person" as, in short, JMP.  Indem. Agr. at A-1.  JMP is the plaintiff in this lawsuit, hence the instant action is not one "against" JMP.  JMP's argument fails on its own terms, then,

**United States District Court**
For the Northern District of California

1   of New York, 06 CIV. 13758 (MHD), 2010 WL 1029547, at *6 (S.D.N.Y.

2   Mar. 15, 2010).  This conclusion is further supported by the

3   Indemnification Agreement's having explicitly contemplated the

4   possibility of third-party actions in the form of private

5   securities litigation.  Id. at *7; Indem. Agr. at A-1.

6        Lastly, JMP argues that even if the Indemnification Agreement

7   does not provide an attorney fee provision, the Agreement itself

8   does.  1st Opp'n at 14.  The sentence on which JMP relies provides,

9   in full: "Whether or not there is a closing of the Transaction, you

10  [Altair] will reimburse us [JMP] periodically upon our request for

11  our reasonable expenses incurred in connection with the

12  Transaction, including, without limitation, the reasonable fees and

13  expenses of legal counsel and travel expenses."  Agr. at 3.  This

14  is mere boilerplate, and it falls short of the sort of

15  unmistakable, clear, explicit language required by Hooper.  "A

16  clause indemnifying the party for 'reasonable counsel fees' that is

17  not exclusively or unequivocally referable to claims between the

18  parties themselves, is insufficiently clear to overcome the general

19  rule" that attorney fees are incidents of litigation.  Broadhurst

20  Investments, LP v. Bank of New York Mellon, 09 CIV. 1154 (PKC),

21  2009 WL 4906096, at *2 (S.D.N.Y. Dec. 14, 2009) (quoting Hooper, 74

22  N.Y.2d at 492) (internal quotation marks omitted).

23       Under New York law, nothing in the Agreement or in the

24  Indemnification Agreement provides JMP with a contractual right to

25  indemnification for attorney fees incurred in the instant

26  litigation.  Accordingly, Altair's Second Motion for Judgment on

27

28  because the Court must strictly construe the Indemnification
    Agreement "to avoid reading into it a duty which the parties did
    not intend to be assumed."  Hooper, 74 N.Y.2d at 491.

the Pleadings is GRANTED with respect to JMP's attorney fee claim.
That claim is DISMISSED WITH PREJUDICE.

### 3.   Promissory Estoppel

The Court now turns to JMP's extra-contractual claims, and hence to California law, beginning with JMP's claim for promissory estoppel.

> Promissory estoppel requires: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance. The purpose of this doctrine is to make a promise that lacks consideration (in the usual sense of something bargained for and given in exchange) binding under certain circumstances.

Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc., 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010) (citations omitted). Under this standard, JMP's claim for promissory estoppel must fail because no party disputes that the promises at issue here were supported by consideration.  Indeed, JMP's breach of contract claim is based in large part on Altair's failure to pay the contractually required consideration.  See Compl. ¶¶ 40-43.  Under California law, the same allegations that give rise to a breach of contract claim cannot also "give rise to a claim for promissory estoppel, as the former [is] predicated on a promise involving bargained-for consideration, while the latter is predicated on a promise predicated on reliance in lieu of such consideration." Co-Investor, AG v. FonJax, Inc., C 08-01812 SBA, 2008 WL 4344581, at *3 (N.D. Cal. Sept. 22, 2008).

Here, JMP argues that the allegations giving rise to its promissory estoppel claim are different from those supporting its claim for breach of contract.  1st Opp'n at 16.  JMP points to the

**United States District Court**
For the Northern District of California

allegations that it (1) prepared a Fairness Opinion for Altair and (2) acted as a placement agent in a small securities offering by Altair, one much smaller than JMP would usually undertake.  Id.; Compl. ¶¶ 27, 49, 54; see also Compl. Ex. B-3 at 81-86 ("Fairness Op.").  Beginning with the Fairness Opinion, JMP concedes that the Agreement called for JMP to prepare a Fairness Opinion for Altair. 1st Opp'n at 16 n.10 (citing Agr. at 1).  But JMP states that the Agreement called for JMP to provide a Fairness Opinion only if Altair undertook a sale or merger -- not if Altair undertook a strategic investment, as JMP says it did.  Id. at 16.  Altair responds that, because the transaction was in fact a sale or merger under the Agreement, JMP did nothing more than perform its duties under the Agreement in rendering the Fairness Opinion.  1st Reply at 10.

     This dispute demonstrates why JMP's claim for promissory estoppel is barred by its breach of contract claim: The only thing at issue here is under which provision of the contract JMP will be paid for its services, not whether there was a contract for services at all or whether the promises contained in the contract were supported by consideration.  Whether the transaction was a strategic investment, as JMP contends, or a sale or merger, as Altair contends, JMP promised to provide financial services for a percentage-based fee.  See Agr. at 1.  A careful reading of the Agreement shows that the parties purposely left the definition of which services JMP would provide open-ended.  Id.  The Agreement provides: "You [Altair] have engaged us [JMP] to advise you concerning opportunities for maximizing shareholder value, and we will render to you such services as we mutually agree are necessary

**United States District Court**
For the Northern District of California

or appropriate in connection with these opportunities."  Agr. at 1.
The Agreement then gives examples of some of the services JMP may
agree to be "necessary or appropriate"; the list ends with the
example of JMP "advis[ing]" Altair "on matters related to
investments or acquisitions."  Id.  Whether the Fairness Opinion
pertained to a sale, merger, or strategic investment, there can be
no serious doubt that JMP rendered it pursuant to the Agreement, in
consideration for Altair's promise to pay under the Agreement.  The
same reasoning applies to JMP's agreement to provide placement-
agent services: There is no allegation that this service was not
"mutually agree[d]" to be "necessary or appropriate in connection
with" JMP's engagement by Altair.  Serving as a placement agent for
a small securities offering, as a client perquisite or otherwise,
falls squarely within the Agreement's expansive definition of JMP's
bargained-for performance.

     Both of the detrimental acts alleged by JMP, then, were JMP's
required performance under the contract.  No party disputes that
JMP's promise to perform under the contract is supported by
consideration.  The only question is how much consideration.  The
purpose of the doctrine of promissory estoppel is to permit a court
of equity to excuse the absence of consideration for an otherwise
enforceable promise.  See Youngman v. Nevada Irr. Dist., 70 Cal. 2d
240, 249 (1969) (doctrine of promissory estoppel appropriate "if
injustice can be avoided only by its enforcement").  The doctrine
of promissory estoppel simply does not apply to the circumstances
of this case.  Id. ("If the promisee's performance was requested at
the time the promisor made his promise and that performance was
bargained for, the doctrine is inapplicable.").

United States District Court

For the Northern District of California

1    Altair raises several other grounds for dismissing JMP's

2    promissory estoppel claim, but the Court need not reach them.  The

3    Court GRANTS Altair's motion with respect to JMP's promissory

4    estoppel claim.  Accordingly, that claim is DISMISSED WITH

5    PREJUDICE.

6               **4.   Fraud and Negligent Misrepresentation**

7    In addition to its two claims sounding in contract, JMP brings

8    two claims sounding in tort: fraud and negligent misrepresentation.

9    Under California law, these torts have essentially the same

10   elements, except for the tortfeasor's requisite state of mind: The

11   former requires scienter while the latter requires only

12   negligence.[9]  Not surprisingly, the allegations underlying JMP's

13   two tort claims are  substantially identical except for the state-

14   of-mind allegations.  Compare Compl. ¶ 56 (alleging scienter) with

15   id. ¶ 61 (alleging negligence).  As explained below, both tort

16   claims are barred for the same reason, independent of any state-of-

17   mind allegations.

18   To summarize, JMP alleges that Altair misrepresented to JMP on

19   numerous occasions that Altair would pay JMP the higher fee

20   associated with a strategic investment when all along Altair knew

21   that it would not.  Compl. ¶¶ 25-26, 51-64.  JMP says it rendered

22   particular services in reliance on these alleged falsehoods,

23   namely, the Fairness Opinion and placement-agent services discussed

24   in the previous section.  Id. ¶ 54.

25

26   [9] In addition to the requisite state of mind, both require

27   misrepresentation, justifiable reliance, and damages. Compare
     Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990
     (2004) (fraud) with Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192,

28   1201 n.2 (9th Cir. 2001) (negligent misrepresentation).

United States District Court
For the Northern District of California

Altair says that it is entitled to judgment on the pleadings with respect to JMP's tort claims because both claims are barred by California's economic loss rule.[10]   The Court agrees.   The economic loss rule, in summary, "is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement."  Oracle USA, Inc. v. XL Global Services, Inc., C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009).   This rule serves to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages: "Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other."  Robinson Helicopter, 34 Cal. 4th at 988 (internal quotation marks and brackets omitted).

While the economic loss rule is simple to grasp in the abstract, particular applications sometimes can be "conceptually difficult."  United, 660 F. Supp. 2d at 1180; see also Erlich v. Menezes, 21 Cal. 4th 543, 551-52 (1999) (listing multiple exceptions to rule).   This case, however, presents a direct application of the rule.   Put simply, JMP has taken the allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts.   The tort claims consist of nothing more than Altair's alleged failure to make good on its

---

[10] Altair also challenges JMP's tort claims as insufficiently pled under Rule 9(b)'s heightened pleading standard for fraud.   That standard obviously applies to JMP's fraud claim, and also applies to its negligent misrepresentation claim.  United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp., ("United") 660 F. Supp. 2d 1163, 1179 (C.D. Cal. 2009). Because the Court disposes of the claims on other grounds, the Court need not consider this challenge and assumes that the tort claims are sufficiently pled.

1  contractual promises.  In pleading the reliance element shared by

2  both torts, JMP points to its having rendered the Fairness Opinion

3  and served as Altair's placement agent.  But, as explained above,

4  these acts constitute nothing more than JMP's usual performance

5  under the Agreement.  As JMP concedes in its Complaint, the parties

6  "contemplate[d] a broad range of possible services that may be

7  provided by JMP," the range being limited only by the parties'

8  mutual agreement.  Compl. ¶ 11.

9      JMP argues that Robinson Helicopter removes its tort claims

10  from the scope of the economic loss rule.  The Court disagrees.

11  First, this Court, like others in California, doubts that Robinson

12  Helicopter has any application outside the products liability

13  context in which it was decided. United, 660 F. Supp. 2d at 1183;

14  Oracle USA, 2009 WL 2084154, at *6.  On the contrary, the economic

15  loss rule seems particularly suited to commercial transactions.

16  Cf. Robinson Helicopter, 34 Cal. 4th at 988 (rule "hinges on a

17  distinction drawn between transactions involving the sale of goods

18  for commercial purposes where economic expectations are protected

19  by commercial and contract law, and those involving the sale of

20  defective products to individual consumers who are injured in a

21  manner which has traditionally been remedied by resort to the law

22  of torts"); United, 660 F. Supp. 2d at 1180 ("[T]he rule is

23  particularly strong when a party alleges 'commercial activities

24  that negligently or inadvertently went awry.'") (quoting Robinson

25  Helicopter, 34 Cal. 4th at 991 n.7).

26      Second, the Robinson Helicopter court expressly described its

27  holding as being "limited to a defendant's affirmative

28  misrepresentations on which a plaintiff relies and which expose a

**United States District Court**
For the Northern District of California

1  <u>plaintiff to liability for personal damages independent of the</u>

2  <u>plaintiff's economic loss</u>."  34 Cal. 4th at 993 (emphasis added).

3  JMP offers no allegations that it has been exposed to liability for

4  "personal damages," nor could it in the context of this commercial

5  transaction for financial advisory services.  Therefore, this case

6  falls outside the ambit of <u>Robinson Helicopter</u>.  <u>See</u> <u>Oracle USA</u>,

7  2009 WL 2084154, at *6 ("The only harm to [plaintiff] was its

8  failure to receive payment; therefore, there is no physical injury

9  or possibility of physical injury resulting from [defendant's]

10  conduct.  Nothing that [defendant] has allegedly done has exposed

11  [plaintiff] to liability to any third party for personal damages or

12  any other type of loss.  The exposure to liability for personal

13  damages was key to <u>Robinson Helicopter</u>'s holding that the economic

14  loss rule did not bar tort remedies in that case.").  JMP has

15  simply failed to allege any conduct "which is independent from the

16  various promises made by the parties in the course of their

17  contractual relationship."  <u>Id.</u> at *4.

18      Lastly, policy considerations do not favor excusing JMP from

19  the economic loss rule.  The rule generally means that courts

20  "enforce the breach of a contractual promise through contract law,

21  except when the actions that constitute the breach violate a social

22  policy that merits the imposition of tort remedies."  <u>Robinson</u>

23  <u>Helicopter</u>, 34 Cal. 4th at 991-92 (internal brackets omitted).

24  "[C]ourts should be careful to apply tort remedies only when the

25  conduct in question is so clear in its deviation from socially

26  useful business practices that the effect of enforcing such tort

27  duties will be to aid rather than discourage commerce."  <u>Id.</u> at 992

28  (internal brackets, ellipses, and quotation marks omitted).  Here,

1   Altair's alleged conduct is not so clearly deviant as to warrant

2   the imposition of tort remedies.  The dispute between Altair and

3   JMP comes down to a dispute over whether JMP will be paid a 1.5

4   percent commission or a 4 percent commission; JMP's assertions of

5   tortious conduct come down essentially to a claim that Altair not

6   only broke its promises, but did so in bad faith.  A tort cause of

7   action will not lie on those facts.  Foster Poultry Farms v. Alkar-

8   Rapidpak-MP Equip., Inc., --- F. Supp. 2d ---, 1:11-CV-00030 AWI,

9   2012 WL 1207152, at *7 (E.D. Cal. Apr. 11, 2012).  This is because

10  the fraudulent misrepresentations alleged by JMP are "also alleged

11  to be a stand-alone contract."  Id.  Such claims must be barred by

12  the economic loss doctrine to preserve the policies underlying

13  contract law from being overwhelmed by those underlying tort law.

14  Id.  "Virtually any time a contract has been breached, the party

15  bringing suit can allege that the breaching party never intended to

16  meet its obligations.  To allow fraud claims in actions such as

17  this one would collapse the carefully-guarded distinction between

18  contract and tort law."  Id. (quoting Oracle, 2009 WL 2084154, at

19  *7) (ellipses and brackets omitted).

20       The Court perceives no way that JMP could save its fraud or

21  negligent misrepresentation claims by amending its pleading.

22  However they are framed, they come within the scope of the economic

23  loss rule.  Accordingly, the Court GRANTS Altair's Second Motion

24  with respect to JMP's claims for fraud and negligent

25  misrepresentation.  Those claims are DISMISSED WITH PREJUDICE.

26  ///

27  ///

28  ///

**United States District Court**
For the Northern District of California

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS Altair's Second Motion for Judgment on the Pleadings.  The Court DISMISSES WITH PREJUDICE JMP's breach of contract claim insofar as it is premised on a contractual right for attorney fees arising from the Agreement or the incorporated Indemnification Agreement.  The Court also DISMISSES WITH PREJUDICE JMP's promissory estoppel, fraud, and negligent misrepresentation claims.  As set forth in the Court's March 14, 2011 Order, JMP's breach of contract claim for fees provided by the Agreement remains undisturbed.

JMP's prayer for punitive damages was based solely on its fraud and negligent misrepresentation claims.  Compl. at 11. Because those claims have been dismissed, the Court STRIKES JMP's prayer for punitive damages.

The Court previously vacated the case management conference set for June 8, 2012.  ECF No. 49.  Having reviewed the parties' joint case management statement, ECF No. 48 ("CMS"), the Court determines that no case management conference is needed at this time.  The Court APPROVES the schedule proposed by the parties, as modified herein.  CMS ¶ 17.  Trial in this matter is set for January 25, 2013.  The pretrial conference is set for January 18, 2013.  The last day for hearing dispositive motions is December 21, 2012.  The discovery cutoff in this matter is September 28, 2012.

IT IS SO ORDERED.

Dated: July  23 , 2012

_____
UNITED STATES DISTRICT JUDGE